**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | No. 25-cr-148 (RC) |
| | : | |
| **DAIJON WEST,** | : | |
| | : | |
| **Defendant** | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request to detain Daijon West pending the resolution of this case pursuant to 18 U.S.C. § 3142(f)(1)(C) (drug offense with a maximum sentence of 10 years or more) and § 3142(f)(2)(A) (risk of flight).. In its support, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this matter.

### BACKGROUND AND STATEMENT OF FACTS

The Defendant has been indicted for Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl and 100 Grams or More of a Mixture and Substance Containing Fentanyl Analogue, in violation of 21 U.S.C. § 846. Specifically, the Defendant is a fentanyl supplier based in Maryland. During the course of this investigation, a Controlled Human Source (CHS) has conducted multiple controlled buys of West, which were audio or video recorded. These buys are as follows (buys with asterisks after the date occurred in Washington, D.C.):

| Date | Pills | Cost | Drug(s) (in subset of pills tested; not necessarily generalizable) |
|---|---|---|---|
| 9/21/2022 | 200 pills (~21.95 grams) | $1,800 | Fentanyl, acetaminophen |
| 10/18/2022 | 500 pills (~53.99 grams) | $4,000 | Fentanyl |
| 2/28/2023 | 100 pills (~10 grams) | $1,000 | Fentanyl |
| 4/14/2023 | 100 pills (~10 grams) | $1,000 | Fentanyl, acetaminophen |
| 7/27/2023* | 505 pills (~55.13 grams) | $4,000 | Fentanyl |
| 9/20/2023* | 505 pills (~53.07 grams) | $4,000 | Fentanyl |
| 4/18/2024* | 565 pills (~59.30 grams) | $4,000 | Fentanyl |
| 2/5/2025* | ~1,022 pills (~100 grams) | $3,500 | Fentanyl (some), acetaminophen, other stuff (not generalizable) |
| 4/10/2025* | 796 pills (~87.16 grams) | $3,500 | Fentanyl (some), fentanyl analogue (some), meth (some), xylazine (some), other stuff |

For example, here is the Defendant during the September 20, 2023, buy:



It is believed that the Defendant was sourcing his pills from California. For example, on about May 6, 2022, law enforcement siezed a package containing about 5,500 pills sent from a fake sender in California to what was then the Defendant's (and his mother's) address.[1]

---

[1] The pills field tested positive for acetaminophen. A portion of the pills tested by the DEA lab were found to contain fentanyl and fentanyl analogue, although based on the number of pills, the results were, according to the report, not generalizable to all of the pills.

2

The Defendant is not only involved in fentanyl dealing. He has also apparently possessed firearms. On December 26, 2022, the Defendant sent a photo in an Instagram message, that appears to be himself possessing a firearm with an extended magazine in his waistband and an AK-47-style rifle in his hands:



On March 27, 2023, the Defendant sent a video to another Instagram user that appears to be of two firearms similar to the two above. In the video, it appears a male is standing beside a bed and is displaying firearms and magazines:



The Defendant was arrested at his (and his mother's) house on May 22, 2025, and a search warrant was executed. Also at the house were his mother, three children, and two other females; law enforcement understands that his brother may live there but was not present. Recovered from a bedroom that was not the Defendant's was:

- A Glock 30 .45 caliber handgun with an extended magazine having a capacity of at least 24 rounds and holding at least 24 rounds.

- Two pistol magazines, each loaded with approximately 10 rounds of .45 caliber ammunition.

- Loose .45 caliber and .223 caliber ammunition.

- A rifle magazine with at least 3 rounds.

Notably, however, upon his arrest, the Defendant claimed that the Glock 30 was his and that because he brought law enforcement to the house, he would take responsibility for everything.



Recovered from a bedroom believed to be the Defendant's (based on a picture and mail matter, though other mail matter in his name was found elsewhere) was:

- Four pistol magazines, 3 of which were loaded with about 8 rounds and one of which was loaded with about 10 rounds of .40 caliber ammunition.

- A backpack with 2 pistol magazines and loose handgun and rifle rounds.

- A plastic bag with various pistol and rifle rounds.



During a post-arrest interview, when asked where he got his pills from, he said he did not deal with them anymore and that he had not sold pills in two to three years (although as noted above, the CHS made a recorded fentanyl purchase from the Defendant on April 10, 2025). He refused to identify any sources of supply. Instead, he said that he would take consequences for his own decisions, but he would not "pull" anyone down with him.

## APPLICABLE LAW

The Bail Reform Act requires pretrial detention where a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(e). Here, the Defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(C) (drug offense with a maximum sentence of 10 years or more) and § 3142(f)(2)(A) (risk of flight). Indeed, there is a rebuttable presumption in favor of detention under § 3142(e)(3)(A). The Government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988)). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations

of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release which will reasonably assure the safety of any other person and the community and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. 3142(g). In consideration of these factors, along, the United States respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or mitigate the risk of flight.

## ARGUMENT

### I.    Nature and Circumstances of the Offense Charged

The United States respectfully submits that the nature and circumstances of the charged offense weigh in favor of detention. The Defendant's conduct occurred against the backdrop of a widespread, lethal drug epidemic. At this point in the opioid epidemic. According to the DEA, fentanyl "is similar to morphine but about 100 times more potent [. . . .] Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction [. . . .]" *See* DEA, Facts about Fentanyl, https://www.dea.gov/resources/facts-about-fentanyl. Startingly, "two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage." *Id.* The lethality of fentanyl is reflected in nationwide statistics: roughly 82,020 people in this country died of drug overdoses in the 12-month period ending in October 2024. *See* CDC National

Center for Health Statistics, *Provisional Drug Overdose Death Counts* (based on provisional data available as of March 2, 2025).[2]  Of these deaths, roughly 51,010 (or about 62 percent) involved synthetic opioids (of which fentanyl is one). *Id.* (By comparison, in 2022, 46,728 people in the United States died of firearms. *See* JHU Bloomberg School of Public Health, *Continuing Trends: Five Key Takeaways from 2023 CDC Provisional Gun Violence Data* (September 12, 2024)).[3] And, thanks in part to people like the defendants in this case, our community has been pummeled by fentanyl: in 2022, Washington, D.C., had an opioid overdose death rate of 48.9 people per 100,000—third among all the states and D.C. only to West Virginia and Delaware. *See* KFF, *Opioid Overdose Death Rates and All Drug Overdose Death Rates per 100,000 Population (Age-Adjusted)* (2022 timeframe).[4]  In this case, the defendant began selling fentanyl to the CHS in September of 2022, and over the next two and a half years sold the CHS fentanyl multiple times.

But the Defendant was also involved with another serious danger—firearms. As the Court is well aware, our community has recently faced staggering levels of gun violence. D.C. saw 274 homicides in 2023, the highest in more than two decades. *See* MPD, *District Crime Data at a Glance*.[5]  About 84 percent of the 203 homicides in 2022 involved the use of a firearm. *See* MPD, *Annual Report 2022*, 17.[6]  But possessing firearms during or in connection with drug trafficking offenses—as it appears the Defendant may have done here, as evidenced by the fact that ammunition was found in a backpack in his house (so it could be easily transported)—poses increased danger in light of the extent to which drug trafficking can trigger violence. *Compare*

---

[2] https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last visited March 28, 2025).
[3] https://publichealth.jhu.edu/center-for-gun-violence-solutions/2024/continuing-trends-five-key-takeaways-from-2023-cdc-provisional-gun-violence-data.
[4] https://www.kff.org/other/state-indicator/opioid-overdose-death-rates.
[5] https://mpdc.dc.gov/page/district-crime-data-glance (last visited May 18, 2024).
[6] https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR_2022_lowres.pdf.

*Smith v. United States*, 508 U.S. 223, 240 (1993) (noting that "drugs and guns are a dangerous combination"). This factor weighs heavily in favor of detention.

## II. Weight of the Evidence Against the Defendants

The United States respectfully submits that the weight of the evidence against the Defendant also weighs in favor of detention. The Defendant sold drugs to a CHS on multiple occasions in buys that were audio or video recorded. Additionally, during a post-arrest, he acknowledged that he used to sell drugs.

## III. History and Characteristics of the Defendant

The United States respectfully submits that the Defendant's history and characteristics also weighs in favor of detention. The Defendant has a 2024 conviction for Contempt of CPO /TPO. The Proffer of Facts with which the Defendant agreed as part of his plea stated that the Defendant was served with a protection order stating he was to have no contact with the protective order petitioner. Nevertheless, the Defendant text messaged the petitioner over on three consecutive days in violation of that court order. Moreover, the Defendant is on probation in that case and his court imposed conditions require him to obey all laws—which he clearly did not do in selling fentanyl to a CHS All of this strongly suggests that the Defendant would not abide by any conditions of release aimed at mitigating the danger he poses.

## IV. Danger to the Community and Risk of Flight

The Government respectfully submits that the Defendant poses a significant danger to the community as demonstrated by his conduct in this case involving fentanyl and firearms. Additionally, the indicted offense carries a minimum-mandatory term of 10 years imprisonment, and up to life imprisonment. This type of imprisonment exposure certainly makes a defendant a risk of flight. As such, he should be detained.

## CONCLUSION

For the reasons noted above, the Government respectfully submits that no condition or combination of conditions will mitigate the Defendant's danger and flight risk. Accordingly, the Government respectfully requests that the Defendant be detained.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: /s/ Solomon S. Eppel
SOLOMON S. EPPEL
ANTHONY SCARPELLI
Assistant United States Attorneys
District of Columbia
D.C. Bar No. 1046323 (Eppel)
D.C. Bar No. 474711 (Scarpelli)
601 D Street, NW
Washington, DC 20530
solomon.eppel@usdoj.gov
anthony.scarpelli@usoj.gov