UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | Case No. 25-cr-148 (RC) |
| **v.** : | |
| : | |
| **DAIJON WEST,** : | |
| : | |
| **Defendant.** : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

I.  Summary of the Plea Agreement

Daijon West (hereafter, "the Defendant") agrees to admit guilt and enter a plea of guilty to Count 1 of the Information, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Forty Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(b)(vi), and 846.

II.  Elements of the Offenses

Count 1 of the Information charges that, from on or about January 1, 2022, and continuing until on or about May 22, 2025, and continuing to the Defendant conspired to commit a narcotics offense. The essential elements of the offense of Conspiracy to Distribute and Possess with Intent to Distribute Forty Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl, each of which the Government must prove beyond a reasonable doubt, are:

1.  That an agreement existed between two or more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance;

2.  That the Defendant intentionally joined that agreement;

3.  That the Defendant knew the purpose of the agreement was to distribute and possess with the intent to distribute a controlled substance; and

4.  That the amount of said controlled substance involved in the conspiracy that was

reasonably foreseeable to the Defendant was 40 grams or more of a mixture and substance containing fentanyl.

The law makes fentanyl a controlled substance.

The essential elements of the underlying offense of distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), each of which the Government must prove beyond a reasonable doubt, are:

1. That the Defendant distributed a controlled substance. Distribute means to transfer or attempt to transfer to another person. The Government need not prove that the defendant received or expected to receive anything of value in return; and

2. That the Defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

The essential elements of the underlying offense of possession with the intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), each of which the Government must prove beyond a reasonable doubt, are:

1. That the Defendant possessed a controlled substance;

2. That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently; and

3. That when the Defendant possessed the controlled substance, the defendant had the specific intent to distribute it.

III. <u>Penalties for the Offense</u>

With respect to Count 1, the penalty for Conspiracy to Distribute and Possess with Intent to Distribute a Mixture and Substance containing a Detectable Amount of Fentanyl and cocaine,

2

in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846, is:

    (A)    a term of imprisonment not less than five years and not greater than twenty years;

    (B)    a fine not to exceed $5,000,000;

    (C)    a term of supervised release of not less than four years to follow any period of incarceration; and

    (D)    a special assessment of $100.

IV.    <u>Brief Statement of the Facts</u>

Had this case gone to trial, the Government's evidence would prove the following beyond a reasonable doubt:

1. Beginning on or about January 1, 2022, and continuing until on or about May 22, 2025, the Defendant conspired to, and did in fact, distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl. The amount of said mixture and substance, including the reasonably foreseeable conduct of all of the members of the conspiracy known to the Defendant, was 1.2 to 4 kilograms.

2. Specifically, the Defendant was a distributor of fentanyl-laced counterfeit oxycodone pills in the Washington, D.C., area. The Defendant obtained his supply of pills primarily from a pill supplier in the Los Angeles, CA, area (the "Supplier"), who, according to Instagram message, the Defendant met through Co-Conspirator 1 and another individual. The Defendant obtained pills from the Supplier primarily through two methods: traveling out to California to retrieve the pills, or having the pills sent through the mail. The names of both the senders and addressees of such parcels were fictitious.

3. For example, on or about May 6, 2022, law enforcement seized a package containing approximately 5,500 counterfeit oxycodone pills, sent from California to the

Defendant's residence in Maryland. On May 8, 2022, the Defendant told Co-Conspirator 1 that he was no longer out in California but that "shit ain't come yet"—that is, that the package was not delivered. After the package was seized, on May 14, 2025, the Defendant asked the Supplier if the supplier was going to "send another pac," or another shipment of drugs. On May 25, 2022, the Supplier asked the Defendant if there was "any word on that pack." The Defendant responded that the missing shipment was not coming and that if it did, "I'm sending dat shit back." The Supplier then asked how the Defendant was going to "make up this 5pc," or 5,000 pills. The Defendant suggested that the supplier send one "boat," or 1,000 pills, through the mail to see if it would successfully arrive.

4. On June 21, 2022, the Supplier—captured on a video camera at a Post Office in California—sent a package to the Defendant at the Defendant's residence. It contained about 465 grams of suspected marijuana. That package was seized by law enforcement.

5. On or about January 5, 2023, the Defendant complained to the Supplier that the Supplier was charging too much money for pills, stating that if the Defendant did not lower his price he would find another supplier.

6. In mid-September 2023, the Defendant traveled to Los Angeles, CA, to meet with the Supplier and obtain pills. In a sale of pills to a law enforcement source on September 20, 2023, the Defendant complained that usually, when he flies to California, his supplier (i.e., the Supplier) had product ready for him, but this time, the supplier did not, and he had to find a different supplier for the pills he sold the source.

7. On or about April 19, 2024, the Supplier sent fentanyl-laced counterfeit oxycodone pills to the Defendant through the mail. Text messages reflect that the Defendant picked up the pills and then paid money for them. Thereafter, the Defendant continued to try to get pills from

4

the Supplier.

8.  During the course of the conspiracy, the Defendant sold fentanyl-laced counterfeit oxycodone pills to a law enforcement source as reflected in the following chart:

9.  The CHS purchased the following amounts on the following dates for a total of $26,000 (buys with asterisks after the date occurred in Washington, D.C.):

| Date | Pills | Drug(s) (in subset of pills tested; not necessarily generalizable) |
|---|---|---|
| 9/21/2022 | 200 pills (~21.95 grams) | Fentanyl, acetaminophen |
| 10/18/2022 | 500 pills (~53.99 grams) | Fentanyl |
| 2/28/2023 | 100 pills (~10 grams) | Fentanyl |
| 4/14/2023 | 100 pills (~10 grams) | Fentanyl, acetaminophen |
| 7/27/2023* | 505 pills (~55.13 grams) | Fentanyl |
| 9/20/2023* | 505 pills (~53.07 grams) | Fentanyl |
| 4/18/2024* | 565 pills (~59.30 grams) | Fentanyl |
| 2/5/2025* | ~1,022 pills (~100 grams) | Fentanyl (some), acetaminophen, other substances (not generalizable) |
| 4/10/2025* | 796 pills (~87.16 grams) | Fentanyl (some), fentanyl analogue (some), meth (some), xylazine (some), other substances |

10.  The Defendant conspired with others in addition to the Supplier. For example, on April 23, 2023, Co-Conspirator 1, mentioned above, sought 100 pills from the Defendant for $400, and said they were for him and someone else. On June 13, 2022, Co-Conspirator 1 obtained an address from Co-Conspirator 2 and had the Supplier send 50 pills to that address.

11.  The Defendant agrees that he personally has read, or had read to him, the Indictments in this case and in 25-cr-136 (RC). The Defendant agrees that he does not have information to dispute or disprove the allegations in those Indictments in any way.

12.  This proffer of evidence is not intended to constitute a complete statement of all facts known by the parties, but it is a minimal statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there

exists a sufficient legal basis for the Defendant's plea of guilty to the charged crimes.

>Respectfully Submitted,
>
>JEANINE FERRIS PIRRO
>United States Attorney

By:   /s/ *Solomon S. Eppel*
SOLOMON S. EPPEL
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530

## DEFENDANT'S ACKNOWLEDGMENT

I have read each of the pages that constitute the Government's proffer of evidence and have discussed it with my attorney, Steve Brennwald, Esq., I fully understand this proffer and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this agreement fully.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in my plea agreement.

I am satisfied with the legal services provided by my attorney in connection with this proffer and my plea agreement and matters related to it.

Date: 2/5/2026

_____
Daijon West
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages that constitute the Government's Proffer of Evidence, reviewed them with my client, Daijon West, and discussed the provisions of the proffer with him fully. These pages accurately and completely set forth the Government's proof, as I understand it.

Date: 2/5/26

_____
Steve Brennwald, Esq.
Attorney for Defendant Daijon West